RENDERED: APRIL 21, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0550-MR

STEVE WILSON                                                         APPELLANT

APPEAL FROM OLDHAM CIRCUIT COURT
v.      HONORABLE CHARLES R. HICKMAN, SPECIAL JUDGE
ACTION NO. 21-CI-00477

OLDHAM COUNTY FISCAL COURT;
BOB DYE; BRENT LIKINS; CHRIS
HAUNZ; DAVID VOEGELE; KEVIN
WOOSLEY; MICHAEL LOGSDON;
STEPHANIE HAWKINS; STEVE
GREENWELL; AND WAYNE THEISS                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND ECKERLE,
JUDGES.

CETRULO, JUDGE: Steve Wilson ("Wilson"), a taxpayer and resident of Oldham

County, filed a declaration of rights petition on September 28, 2021 objecting to

the process and decision of the Oldham County Fiscal Court ("Fiscal Court") to

relocate and demolish part of the courthouse building in Oldham County. Naming the individual members of the Fiscal Court in their official capacity, he asserted that they had failed to conduct a mandatory public facilities review before the demolition and construction began, in violation of both Kentucky Revised Statutes ("KRS") 100.324(4) and a local ordinance. The Oldham County circuit judge recused himself from this matter, and it was referred to Judge Hickman of Shelby County.

The Fiscal Court and its individual members moved for dismissal, and alternatively, for summary judgment. Their arguments were primarily addressed to the jurisdiction of the court, due to lack of standing. The trial court entered an opinion and order granting dismissal on counts one, two, and three and granting summary judgment on count four. At the time of its ruling, the trial court noted the demolition had already occurred and progressed such that the historic portion of the courthouse had been lifted and relocated to be incorporated into the new courthouse building, and that Wilson did lack standing. This appeal followed.

**STANDARD OF REVIEW**

We review the trial court's grant of summary judgment – and motions to dismiss – *de novo* "and any factual findings will be upheld if supported by substantial evidence and not clearly erroneous." *Bradley v. Commonwealth ex rel. Cameron*, 653 S.W.3d 870, 875 (Ky. 2022) (citation and internal quotation marks

-2-

omitted). "Whether a party has standing is a jurisdictional question of law that is reviewed *de novo*." *Id.* (citing *Commonwealth v. B.H.*, 548 S.W.3d 238, 242 (Ky. 2018)).

We begin, however, with an eye toward the Declaratory Judgment Act ("the Act") – specifically, KRS 418.045 – as the complaint alleged an action to declare Wilson's rights under the Act. This Court has discussed that "[t]he condition precedent to a declaration of rights is the existence of an actual controversy respecting a justiciable issue . . . ." *Veith v. City of Louisville*, 355 S.W.2d 295, 298 (Ky. 1962) (citation omitted). What constitutes "[j]usticiability turns on evaluating both the appropriateness of the issues for decision [ ] and the hardship of denying judicial relief[,]" or the impossibility of granting the same. *Combs v. Matthews*, 364 S.W.2d 647, 648 (Ky. 1963) (internal quotation marks and citation omitted); *see also Revis v. Daugherty*, 215 Ky. 823, 287 S.W. 28 (1926). A litigant must demonstrate an actual legal interest to establish constitutional standing to seek judgment under the Act. *See Bradley*, 653 S.W.3d at 877 (citation omitted).

In *Bradley*, the Kentucky Supreme Court was faced with an action filed by a taxpayer and resident objecting to the elimination of a circuit court division by the legislature. *Id.* at 874. The plaintiff contended that she was a candidate interested in seeking the very judicial office which had been eliminated.

-3-

*Id.* at 878. Still, the Court held that she had not alleged a concrete and particularized injury-in-fact sufficient to confer constitutional standing in her individual capacity. *Id.*

Prior to *Bradley*, the high Court had adopted the federal constitutional standing doctrine in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). *Bradley*, 653 S.W.3d at 877 (citing *Commonwealth Cabinet for Health and Fam. Servs., Dep't of Medicaid Servs. v. Sexton, by and through Appalachian Reg'l Healthcare, Inc.*, 566 S.W.3d 185, 188 (Ky. 2018)). *Lujan*, in summary, held that a party must demonstrate standing as defined by three requirements: injury, causation, and redressability. *See Sexton*, 566 S.W.3d at 192. As for injury, Wilson must be able to articulate a right or claim personal to him and not simply a grievance he shares in common with other taxpayers, *i.e.*, a generalized grievance. *See Ward v. Westerfield*, 653 S.W.3d 48, 52 (Ky. 2022).

In *Ward*, the Kentucky Supreme Court was faced with a challenge to a ballot initiative, presented by a taxpayer and resident as well as the Kentucky Association of Criminal Defense Lawyers. *Id.* at 50-51. The high Court again found no standing present for those parties. *Id.* at 52. Citing *Lujan*, the *Ward* Court emphasized that the party invoking jurisdiction bears the burden of establishing injury, causation, and redressability, and of establishing that the alleged injury harmed them in a concrete and particularized manner. *Id.* at 51-52.

"To have constitutional standing, a 'plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* at 51 (citing *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136).

Here, although the trial court's decision was issued just prior to *Bradley* and *Ward*, it is very much in keeping with those recent decisions and with *Sexton*, upon which it relied. For those reasons, we affirm. The trial court held that Wilson had not met his burden of establishing that the alleged deficiencies in the review process conducted by the Fiscal Court harmed him in any concrete and particularized manner. Instead, Wilson's claims constitute non-justiciable generalized grievances, because the harms he asserted were generally shared in equal measure by all residents and taxpayers of Oldham County. On appeal, Wilson contends that he has an interest in ensuring that his elected representatives adhere to the law. However, this argument has clearly been rejected and found insufficient for the exercise of jurisdiction.

Wilson cites to *Bluegrass Pipeline Company, LLC v. Kentuckians United to Restrain Eminent Domain, Inc.*, 478 S.W.3d 386, 391 (Ky. App. 2015), where we found that litigants did have standing to question whether the pipeline company possessed the power of eminent domain. However, those litigants' individual rights were at risk since the company was actively negotiating with

landowners at the time of filing. *Id.* at 390. Without court clarification as to whether the company had the right to negotiate or the right to simply take the properties, the company would have an "unfair advantage during the negotiation process." *Id.*

The case at bar is quite distinguishable from *Bluegrass Pipeline* because, here, there is only a general complaint that actions have been taken inconsistent with the statutes; however, there is no evidence that Wilson or anyone else is at risk of harm or injury, even if that is true. Again, as set forth in *Sexton*, when the asserted harm is a "generalized grievance" shared in substantially equal measure by a large class of citizens, that harm alone does not warrant exercise of jurisdiction.

"[T]axpayers in Kentucky, on behalf of themselves, have been permitted to sue government bodies or their agents to challenge the propriety of city, county, or state tax or expenditure of public funds" as a matter of equity. *Overstreet v. Mayberry*, 603 S.W.3d 244, 263 (Ky. 2020). In *Overstreet*, the plaintiffs were members of the Kentucky Retirement System who brought claims against trustees of the fund for alleged funding losses and breach of fiduciary duties. *Id.* at 249-50. However, the Kentucky Supreme Court held that they lacked standing as well. *Id.* at 249. Even taxpayer claims require a legally cognizable injury for which the law provides a remedy, and the injury must still be

particularized to the plaintiff in a personal and individual way. *Id.* at 252. As such, Wilson did not establish an injury.

Additionally, the issue Wilson attempts to raise is not redressable. This Court has explained that "[p]ublic wrongs or neglect or breach of public duty *cannot be redressed* at a suit in the name of an individual . . . whose interest in the right asserted does not differ from that of the public generally, or who suffers injury in common with the public generally[.]" *Wegener v. Wehrman*, 312 Ky. 445, 227 S.W.2d 997, 998 (1950) (citation omitted).

Similarly, while Wilson asserts that he has now expended some personal funds to hire an expert or planner to provide a different design for the courthouse, those expenditures do not create a right to relief or a substantial concrete injury as *Overstreet* and *Ward* confirm. In *Ward*, the Court reiterated that justiciability in the context of a taxpayer's action still requires the taxpayer to present an interest that is direct, pecuniary, and substantial. *Ward*, 653 S.W.3d at 56 (citation omitted). A generalized interest in the proper administration of the law, which Wilson claims did not occur here, is simply not sufficient. *Sexton*, 566 S.W.3d at 197 (citation omitted).

Further, redressability is a significant burden that Wilson cannot meet in this case. While he argues that the courthouse construction is far from complete, the fact is that the annex has been demolished; the historic courthouse has been

lifted from its foundation and moved; and the design and construction is well under way with approval from the Administrative Office of the Courts, the Project Development Board, and the Fiscal Court, charged with the building of the new courthouse. While Wilson complains that recommendations might have been made to the Fiscal Court by the planning commission, and asserts that this review was required under KRS 100.324, nothing this Court could order would alter the reality of this situation. His attorney conceded that there were no damages in fact being claimed, and the only relief being sought was "procedural," *i.e.*, for the Fiscal Court to submit the plan to the planning and zoning commission. This action was not filed until after the demolition and moving of the historical structure had already occurred.

Finally, that brings us to the defense of mootness, which serves as additional grounds to uphold the trial court's decision. As our courts have long recognized, "[a] 'moot case' is one which seeks to get a judgment . . . upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a *then* existing controversy." *Morgan v. Getter*, 441 S.W.3d 94, 98-99 (Ky. 2014) (emphasis in original) (citing *Benton v. Clay*, 192 Ky. 497, 233 S.W. 1041, 1042 (1921)). Wilson's complaint essentially seeks to enjoin activities that have already occurred, so it would have no legal effect for this Court to render an advisory opinion. "[Q]uestions which may never arise or which are merely

advisory, academic, hypothetical, incidental or remote, or which will not be decisive of a present controversy" have been held to not present justiciable controversies. *Hughes v. Welch*, 664 S.W.2d 205, 208 (Ky. App. 1984).

While Wilson complains of a deficient procedural process, we are not convinced he could prevail if he did possess standing. This Court has consistently held that KRS 100.324(4) only requires the state, or in this case, the Fiscal Court, to submit proposals *for review* to the planning commission. If it does apply, KRS 100.324(4) requires a mandatory review, but only voluntary compliance by the referring body. *City of Worthington Hills v. Worthington Fire Prot. Dist.*, 140 S.W.3d 584, 590 (Ky. App. 2004). It is free to proceed with its proposal, even if objections were presented. *Id.* The statute does not guarantee any right to be heard to citizens nor mandate compliance with any planning commission proposal. Even if Wilson could meet the burdens outlined above to establish standing, any future relief would be barred as moot or speculative. The building is under construction; the historic portion has already been moved; and the Fiscal Court was free to proceed with its proposal.

We are unable to envision any relief that could follow from a decision favorable to Wilson. For all the foregoing reasons, we affirm the ruling of the Oldham Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:                BRIEF FOR APPELLEES:

Randal A. Strobo                     Carol S. Petitt
Clay A. Barkley                      Kyle M. Vaughn
Julia D. Taylor                      Ronnie W. Mills
Louisville, Kentucky                 Peewee Valley, Kentucky